2013 CO 43

**PLANNING PARTNERS INTERNATIONAL, LLC, Petitioner**

v.

**QED, INC., Respondent.**

**Supreme Court Case No. 11SC961**

Supreme Court of Colorado.

July 1, 2013

Attorneys for Petitioner: Messner & Reeves, LLC, Derek C. Blass, Denver, Colorado, Feldman Nagel, LLC, David W. Feeder, II, Denver, Colorado.

Attorneys for Respondent: Campbell Killin Brittan & Ray, LLC, William C. Brittan, Benjamin P. Parrott, Denver, Colorado.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 We granted certiorari in *Planning Partners International, LLC v. QED, Inc.,* — P.3d —, No. 10CA1848, 2011 WL 5084925 (Colo.App. Oct. 27, 2011) (selected for official publication), to determine whether the court of appeals erred in concluding that, where reasonable attorney fees are provided for in a promissory note or contract, and the judgment based on that note or contract has been reduced by a counterclaim arising out of the transaction, the trial court must apportion attorney fees in proportion to the amount recovered on the note less the amount recovered on the counterclaim.[1] We conclude that, under these circumstances, the determination whether and how to apportion attorney fees is within the discretion of the trial court and we will overturn its determination only upon an abuse of that discretion. Accordingly, we reverse the judgment of the court of appeals.

## I.

¶ 2 Planning Partners International (PPI) is a meeting planning company based in Colorado. Quality Electrical Distribution (QED) is an electrical supply company headquartered in Denver. In February of 2008, PPI and QED entered into a Letter of Agreement, in which PPI agreed to plan, manage, and coordinate all flight reservations for QED's upcoming incentive trip to Barcelona, Spain. PPI agreed to act as QED's agent and, in this capacity, negotiated and entered into a Standard Charter Agreement with Omni Air International, Inc. (Omni) to provide a chartered plane. The Standard Charter Agreement provided that QED would be notified of any cost increases in fuel at least thirty days before the scheduled departure date. It further stated that any such in-

---

1. We granted certiorari on the following issue:
   Whether the Appellate Court erred when it determined that Colorado's district courts do not have discretion to determine whether, and how, an award of attorney's fees should be apportioned between claims and counterclaims.
   The issue as framed does not squarely reflect the holding of the court of appeals. The court did not hold that Colorado district courts lack discretion to determine whether, and how, an award of attorney fees should be apportioned between claims and counterclaims across all conceivable contexts. Rather, the court held that in the circumstance where reasonable fees are provided for in a promissory note or contract, and the judgment based on the note or contract has been reduced by a counterclaim arising out of the transaction, an apportionment of attorney fees is required in proportion to the amount recovered on the note less the amount recovered on the counterclaim.

crease greater than ten percent of the preexisting charter price (here, equivalent to $63,893.70) would authorize QED to either accept the increase or terminate the trip without penalty.

¶ 3 On June 3, 2008, three days before departure, Omni notified PPI that fuel prices had risen significantly above the originally estimated charter price and that QED would be required to pay an additional $122,428.35. QED's representative informed PPI that he could not access these funds because QED's owner was already in Europe and unavailable. Because Omni demanded immediate payment, PPI offered to lend QED the amount of the surcharge, which QED accepted.

¶ 4 PPI and QED entered into a Loan Agreement & Promissory Note on June 4, 2008. The note provided that PPI would loan QED $122,428.35 for immediate payment to Omni, and QED would repay PPI that amount by June 18, 2008. The note contained the following provision with regard to attorney fees:

> The Borrower [QED] agrees to pay on demand reasonable costs and expenses, if any, including reasonable attorneys' fees and expenses, in connection with the enforcement of this Loan Agreement & Promissory Note by PPI.

¶ 5 QED failed to repay the principal on the note. PPI brought suit on July 22, 2008, asserting claims for breach of the note, promissory estoppel, and unjust enrichment. QED counterclaimed, alleging that PPI had breached its duties as QED's agent under the Letter of Agreement based on PPI's failure to enforce, or its waiver of, the thirty-day notice provision in the Standard Charter Agreement. QED also filed a third-party complaint against Omni for breach of its duties under the Standard Charter Agreement. PPI later amended its complaint to add additional claims for fraud and breach of contract related to the PPI/QED Letter of Agreement.

¶ 6 The parties tried the case before a jury on February 22–25, 2010. At trial, the judge

granted QED's motion for directed verdict on PPI's fraud claim, as well as PPI's motion for directed verdict on QED's negligence and breach of fiduciary duty counterclaims. On the remaining claims, the jury found in favor of PPI for breach of contract under the promissory note and Letter of Agreement and in favor of QED on its counterclaim for breach of the Letter of Agreement. The jury awarded $131,725.27 to PPI and $58,534.65 to QED. The trial court entered judgment consistent with these verdicts.

¶ 7 Following entry of judgment, both parties moved for an award of costs and attorney fees. The trial court concluded that PPI was the prevailing party pursuant to C.R.C.P. 54(d) and awarded PPI its reasonable fees and costs [2] incurred in the litigation. On July 21, 2010, the court held a hearing to determine the amount of reasonable attorney fees to award to PPI. At the hearing, QED argued that Colorado law required the court to apportion PPI's fees among the various claims asserted in the case, particularly in light of the fact that the jury had awarded QED $58,534.65 on its counterclaim. Specifically, QED requested that the trial court limit PPI's attorney fees to those incurred in connection with its promissory note claim and exclude fees incurred defending against QED's counterclaims.

¶ 8 Upon hearing argument and considering the various submissions, exhibits, and expert testimony of the parties, the trial court rejected QED's contention that apportionment was mandatory. It concluded that apportionment is one of "a number of tools" available to trial courts to use in their discretion but it has never been explicitly required by Colorado law. The court declined to apportion fees in the manner requested by QED:

> I think that the case was prosecuted in the fashion initially as a result of the promissory note that was in dispute, other issues and defenses, affirmative defenses, third-party claims, Omni International was in the case at one point, all of those matters complicated the case and all of the fees incurred by the plaintiffs in this case were

---

2. C.R.C.P. 54(d) provides that costs shall be allowed to the prevailing party unless otherwise

directed by the court. The rule does not govern awards of attorney fees.

incurred in the fashion of and related to collection on the promissory note. Yes, they may have been to some degree related and related to other claims, including claims that didn't go forward, and I've tried to accommodate for that fact, particularly the common law fraud claim; but at its core, the issues were sufficiently intertwined and inter-related such that *[apportionment] of the fees in the fashion that [QED's expert] suggested and [QED's counsel] has requested is not a road that the Court is persuaded is appropriate.*

¶ 9 The trial court did not, however, grant PPI the full $262,939 in fees it requested. Instead, it excluded $26,290.50 related to PPI's unsuccessful fraud claim, $88.50 earned by an individual the court found had no apparent reason to be involved in the litigation, and reduced the total amount by twenty percent, finding that, although PPI attorneys charged a reasonable hourly rate, the overall number of hours claimed was unreasonable. In sum, the court awarded PPI $188,748.80 in attorney fees.

¶ 10 The court of appeals reversed, concluding that the trial court erred as a matter of law in calculating PPI's fees. Noting the lack of governing authority on point, the court reviewed several other jurisdictions' approaches to fee apportionment and concluded that, where reasonable attorney fees are provided for in a promissory note or contract, and the judgment based on that note or contract has been reduced by a counterclaim arising out of the transaction, an apportionment of attorney fees is required in proportion to the amount recovered on the note less the amount recovered in the counterclaim. Accordingly, the court of appeals calculated PPI's fees by taking PPI's net recovery ($73,190.62) and dividing it by the total jury award to PPI ($131,725.27), resulting in a factor of 0.5556. It then multiplied the trial court's award of attorney fees ($188,748.80) by 0.5556, resulting in a total fee award of $104,868.83. PPI appeals this judgment.

## II.

█ ¶ 11 We conclude that, where a promissory note or contract provides for reason-

able attorney fees, and the judgment based on the note or contract is reduced by a counterclaim arising out of the transaction, the determination whether and how to apportion fees rests within the discretion of the trial court and will be overturned only upon an abuse of that discretion.

### A. Standard of Review

█ ¶ 12 We typically review the reasonableness of attorney fee awards for abuse of discretion. *Crandall v. City of Denver*, 238 P.3d 659, 661 (Colo.2010); *Haystack Ranch, LLC v. Fazzio*, 997 P.2d 548, 556 (Colo.2000). A trial court abuses its discretion if its actions are manifestly arbitrary, unreasonable, or unfair. *Colo. Nat'l Bank of Denver v. Friedman*, 846 P.2d 159, 167 (Colo. 1993). Accordingly, a trial court's determination of a reasonable attorney fee award will generally not be disturbed on review unless it is patently erroneous and unsupported by the evidence. *Hartman v. Freedman*, 197 Colo. 275, 281, 591 P.2d 1318, 1322 (1979); *see also Haystack Ranch*, 997 P.2d at 556 ("Appellate courts review an award of attorney fees and costs for an abuse of discretion, which occurs when 'the findings and conclusions of the trial court are so manifestly against the weight of the evidence as to compel a contrary result.'" (citing *In re Water Rights of Hines Highlands Ltd. P'ship*, 929 P.2d 718, 728 (Colo.1996))); *Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 388 (Colo.1994) ("A determination of reasonableness is a question of fact for the trial court and 'will not be disturbed on review unless it is patently erroneous and unsupported by the evidence.'" (citation omitted)). Further, the party requesting fees has the burden of proving that it is entitled to them. *Anderson v. Pursell*, 244 P.3d 1188, 1194 (Colo.2010).

### B. Attorney Fees

█ ¶ 13 In Colorado, attorney fees are generally not recoverable absent a statute, court rule, or private contract to the contrary. *Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 (Colo.1996); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141

(1975). This reasoning is based on the American rule, which requires each party in a lawsuit to bear its own legal expenses. *Bernhard*, 915 P.2d at 1287.

¶ 14 In this case, the court of appeals held that, where a promissory note or contract provides for reasonable attorney fees, and the judgment based on that note or contract has been reduced by a counterclaim arising out of the transaction, trial courts must apportion attorney fees in proportion to the amount recovered on the note, less the amount recovered on the counterclaim. The court of appeals reached this conclusion after acknowledging the lack of Colorado Supreme Court authority on point; it consulted other jurisdictions for guidance. Contrary to the court of appeals' conclusion, we determine that, although trial courts may apportion fees where reasonable, they are not required to do so.

¶ 15 QED encourages us to follow the "majority of jurisdictions that have addressed the issue" in requiring proportional diminishment of attorney fees when the defendant recovers on a counterclaim. However, our own survey of the case law does not clearly support QED's position that proportional diminishment is the general rule.

¶ 16 In *Husband v. Colorado Mountain Cellars, Inc.*, 867 P.2d 57 (Colo.App.1993), Husband had made a loan to Colorado Mountain Cellars evidenced by two promissory notes secured by Mountain Cellars' inventory and equipment. When Mountain Cellars failed to repay the notes, Husband foreclosed on the secured property. Husband brought an action to recover the deficiency on the property, and Mountain Cellars counterclaimed for breach of contract. Both parties prevailed on their respective claims at trial. On appeal, Mountain Cellars contended that the court erred in its award of attorney fees to Husband because a substantial portion of the fees awarded were incurred defending against Mountain Cellars' successful counterclaim—not in prosecuting Husband's claims on the notes. The court of appeals rejected this argument, concluding that, where "fees are incurred in defending against counterclaims that are grounded upon the same transaction out of which the principal debt

arose and are asserted to defeat that debt, ... it is not improper to consider these fees as a part of the costs of collection of that debt." *Id.* at 62. Thus, the court declined to require strict apportionment of fees based on Mountain Cellars' successful counterclaim.

¶ 17 Similarly, in *Universal Drilling Co. v. Camay Drilling Co.*, 737 F.2d 869 (10th Cir. 1984), a buyer of drilling rigs brought an action against the seller for breach of warranty. The parties had executed a promissory note authorizing the provision of reasonable attorney fees. *Id.* at 875. On appeal, the Tenth Circuit rejected the plaintiffs' contention that the trial court was required to apportion fees to reflect only the fees incurred in recovery of monies owed to the defendant under the note, as opposed to those incurred defending against the plaintiffs' claims for breach of warranty. *See id.*; *see also Saad v. GE HFS Holdings, Inc.*, 366 Fed.Appx. 593, 606 (6th Cir.2010) (determining that attorney fees incurred by defendant were recoverable pursuant to Ohio statute governing attorney fees in commercial contracts of indebtedness); *Sybert v. Combs*, 555 So.2d 1313, 1314 (Fla.Dist.Ct.App.1990) (holding that, where seller brought suit against buyer based on breach of a promissory note and buyer counterclaimed, the attorney fees provision in the note unambiguously provided for payment of attorney fees to seller notwithstanding a jury verdict finding both parties' claims successful and awarding each $10,000); *Duryea v. Third Nw. Nat. Bank of Minneapolis*, 606 F.2d 823, 826 (8th Cir.1979) (rejecting appellant's claim that attorney fees should exclude those incurred in defending against claims of illegal banking practices and, rather, should be limited to those directly incurred in collecting on note).

¶ 18 By contrast, in *Jackson v. Oppenheim*, 533 F.2d 826 (2d Cir.1976), a plaintiff appealed an unsuccessful securities law action, arguing, among other things, that the district court erred in its award of attorney fees. The plaintiff contended that the two promissory notes authorizing an award of attorney fees were intended to cover fees incurred only in collection on the notes, rather than fees incurred in defense of an ancillary federal securities law claim. *Id.* at 831.

Construing the notes under New York law, the Second Circuit agreed. It reasoned that because New York law was unsettled on the issue of liability for fees defending against federal securities law claims, it was "reluctant to imply a result under that law which would conflict with the general 'American rule' against awarding fees against a losing party." *Id.*

¶ 19 In the instant case, our court of appeals relied in part on *Pioneer Constructors v. Symes*, 77 Ariz. 107, 267 P.2d 740, 744 (1954), as the "leading case" on the method of apportionment the court ultimately chose to adopt. In *Pioneer*, the Supreme Court of Arizona articulated the "general rule" as,

> where reasonable attorney fees or some designated percentage is provided for in the note, and defendant counterclaims and recovers on the counterclaim, the plaintiff recovering on the note, the amount recoverable for attorney's fees is reduced in proportion to the amount recovered on the note less the amount recovered on the counterclaim.

*Id.* The Colorado Court of Appeals in *Wagonmaster, Inc. v. Parrot*, 713 P.2d 417 (Colo. App.1985), cited *Pioneer* as support for its conclusion that a contractor was not entitled to a judgment for attorney fees. The contractor had filed an action against Dr. and Mrs. Parrot (the owners) to enforce a mechanic's lien and recover damages for breach of contract. *Id.* at 417. The owners counterclaimed for breach of contract and negligence. *Id.* The jury awarded $10,000 to the contractor on its complaint and $19,300 to the owners on their counterclaim. The construction contract provided in relevant part that the owners "agree[ ] to pay interest ... on the unpaid balance on past due amounts ... and further agree[ ] to pay ... reasonable attorney's fees and court costs as may be required." The court of appeals concluded that, because the owners' counterclaim was greater than the amount recovered on the complaint, there was no "unpaid balance on past due amounts" and therefore no basis for allowance of attorney fees. *Id.* at 418.

¶ 20 The case which the court of appeals most directly relied on in arriving at its proportional diminishment approach[3] in this case is *Borchardt v. Wilk*, 156 Wis.2d 420, 456 N.W.2d 653 (Wisc.Ct.App.1990). In *Borchardt*, the plaintiff recovered $9,469.20 on a promissory note, and the defendants recovered $9,000 on their counterclaim. *Id.* at 655. The plaintiff then requested her full attorney fees pursuant to clauses in the note and mortgage at issue, which the trial court awarded. *Id.* On review, the appellate court analyzed the attorney fee provisions of the note and mortgage and concluded that they were ambiguous on the question whether the parties intended the plaintiff to recover full attorney fees in the event the defendant established misrepresentation in the underlying transaction. *Id.* It concluded that, where an agreement between parties on attorney fees is ambiguous,

> [t]he general rule is that where reasonable attorney's fees or some designated percentage is provided for in the note, and the plaintiff recovers on the note and the defendant recovers on the counterclaim, the amount recoverable for attorney's fees is reduced in proportion to the amount recovered on the note less the amount recovered on the counterclaim.

¶ 21 Upon review of these and other cases we do not find proportional diminishment to be the clear majority rule, nor do we choose to adopt it as a general principle here.

■ ¶ 22 First, the majority of cases cited by both PPI and QED examine the reason-

---

**3.** A close examination of the case law reveals that proportional diminishment is a rule of construction developed by courts to interpret a specific type of fee provision—one that requires a debtor who defaults on a promissory note to pay attorney fees in the amount of a designated percentage of the principal remaining at the time of collection. *See Bongiovanni v. Fickett*, 122 Cal. App. 538, 10 P.2d 539, 542–43 (1932) (holding the trial court did not err in proportionally diminishing the attorney fees provided for in a note). The proportional diminishment rule thus arose in the context of fee provisions that are tethered to the remaining principal or amount due on the promissory note. In such cases, the court deducts amounts that a debtor recovered on counterclaims before determining the amount due on a note. However, nothing about a provision for "reasonable" fees requires a court to award fees in proportion to the amount due on the note.

ableness of attorney fees and the appropriateness of apportionment through the lens of the statute, contract, or note giving rise to the fees. This is unsurprising. Most jurisdictions only allow for recovery of attorney fees where specifically authorized. The document providing the basis for fees is a natural starting point in most reasonableness analyses. Here, however, neither party argued in the trial court that the language of the specific promissory note at issue authorized apportionment. As a result, we are not asked to address the question whether this particular promissory note contemplates apportionment of fees. We are asked only to consider whether, in all cases where reasonable fees are provided by promissory note or contract, and the judgment on that note or contract has been reduced by a counterclaim arising from the same transaction, courts are required to apportion fees as a matter of course.[4] We conclude the answer is no.

■ ¶ 23 As observed by the United States Supreme Court, " 'there is no precise rule or formula' for determining attorney's fees." *Evans v. Jeff D.*, 475 U.S. 717, 736, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *see also Am. Water Dev., Inc.*, 874 P.2d at 386. Trial courts consider a variety of factors in determining the reasonableness of a fee. *See Am. Water Dev., Inc.*, 874 P.2d at 386 ("[T]he proper starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *Mau v. E.P.H. Corp.*, 638 P.2d 777, 779 (Colo.1981) (discussing the list of factors set forth in the Code of Professional Responsibility to be considered in determining the reasonableness of a fee, including but not limited to the time and labor required, the novelty

and difficulty of the questions involved, the skill requisite to perform the legal service properly, the fee customarily charged in the locality for similar legal services, the amount involved and the results obtained, the experience, reputation, and ability of the lawyer or lawyers performing the services).

¶ 24 Further, our case law has often emphasized the considerable discretion afforded to trial courts in determining the reasonableness of attorney fees. *See Am. Water Dev., Inc.*, 874 P.2d at 388 (upholding a trial court award of attorney fees and noting that the trial judge had "participated in each stage of the proceeding," "heard the testimony of expert witnesses," "was familiar with much of [the experts'] work product in the form of exhibits," and "was capable of understanding what was reasonably expected in attorney fees"); *Farmers Reservoir & Irr. Co. v. City of Golden*, 113 P.3d 119, 126 (Colo.2005) ("The determination of what constitutes reasonable attorney fees 'is a question of fact for the trial court and will not be disturbed on review unless it is patently erroneous and unsupported by the evidence.' " (citation omitted)); *Haystack Ranch*, 997 P.2d at 556 ("Appellate courts review an award of attorney fees and costs for an abuse of discretion, which occurs when 'the findings and conclusions of the trial court are so manifestly against the weight of the evidence as to compel a contrary result.' " (citation omitted)).

¶ 25 In this case, QED does not directly contest the trial court's determination of PPI's reasonable fees; it argues only that the trial court was obligated to apportion fees in the manner it requested. However, requiring proportional diminishment in all cases presenting these factual circumstances would undermine trial courts' ability to determine a reasonable fee under the specific

---

4. Numerous courts have cited *Pioneer* for the proposition that proportional diminishment applies to all notes providing for attorney fees—not just those notes providing for fees based on a designated percentage of the principal remaining on the note. *E.g., Borchardt*, 456 N.W.2d at 653; *Glen Alden Corp. v. Duvall*, 240 Md. 405, 215 A.2d 155, 176 (1965); *Burras v. Canal Const. & Design Co.*, 470 N.E.2d 1362, 1370 (Ind.App. 1984); *see also* L.S. Teller, *Annotation*, § 3, 41 A.L.R.2d 677 (originally published in 1965). *Pio-*

*neer* articulated a rule suggesting that complete and proportional diminishment apply to provisions both for reasonable fees and for fees as a designated percentage of the amount due on the note. *See* 267 P.2d at 744. This articulation may have been unnecessarily broad given that the case involved only complete diminishment; that is, the extinguishment of fees where the amount recovered on counterclaims exceeds the amount recovered on the note.

facts of the cases before them. Cases may vary drastically in the types of claims asserted, the relatedness of claims and counterclaims, the sound or frivolous nature of actions, and the phrasing of contractual or statutory attorney fee provisions. In some scenarios, a trial court's discretion may be circumscribed by the statute or contract giving rise to fees. In others, a trial court may determine that some apportionment is necessary for a fee to be reasonable. We conclude that the widely divergent circumstances under which attorney fee issues are litigated militate in favor of flexibility and discretion on the part of the trial court, rather than a rule of mandatory apportionment.

### C. Application to this Case

¶ 26 The trial court did not abuse its discretion in refusing to strictly apportion fees in the manner requested by QED. As the trial judge noted at the hearing, he was thoroughly familiar with how the case had progressed and the multitude of issues involved:

> I've lived with this case since I've been here in January, and I am very much aware of the protracted convoluted history this cases possesses.... [H]aving heard all of the evidence, having reviewed all of the multiple pretrial motions, having made mid-trial rulings that effectively impact the final presentation at trial and closing argument and final decisions for the jury to consider, I'm acutely aware of the true issues in the case and how it got that way and why it was that way, and the reality is the nature of the case and the fact of those circumstances and how it was presented ultimately complicated the case unnecessarily, as I've noted, but definitely implicated the rate of fees and the nature of the fees to be incurred.

¶ 27 In his oral analysis contained in a transcript of record in this case, the trial judge proceeded methodically through PPI's accounting, discounting the fees incurred in a claim he found to be unsupported by the evidence and reducing the entire amount of requested fees by twenty percent. He further determined that that issues in this case were "sufficiently intertwined and inter-related" that apportionment was not appropriate. As discussed above, neither party argued whether apportionment was appropriate based on the language of the note itself. Evidence in the record supports the trial court's findings and we will not disturb them on appeal.

### D. Request for Attorney Fees on Appeal

¶ 28 Finally, PPI requests that this court award it attorney fees associated with this appeal pursuant to C.A.R. 28(b), C.A.R. 39.5, and the language of the promissory note itself. We remand this case to the appeals court with directions to return it to the trial court for entry of judgment consistent with this opinion, including a determination of whether PPI is entitled to attorney fees in connection with this appeal and, if so, the amount of PPI's reasonable fee award.

### III.

¶ 29 Accordingly, we reverse the judgment of the court of appeals. We remand this case to the court of appeals, with directions to return the case to the district court for further proceedings consistent with this opinion.

Justice EID concurs in the judgment.

Justice EID, concurring in the judgment.

¶ 30 I agree with the majority that the trial court was not required to apportion fees in this case, but come to this conclusion by way of different reasoning. Here, the language of the contract required QED to pay reasonable costs and fees that PPI might incur "in connection with the enforcement of" the loan agreement and promissory note. The language "in connection with the enforcement of" the agreement and note is broad enough to include costs and fees associated with defending against QED's counterclaims stemming from the same transaction. I therefore agree with PPI that the court of appeals erred in attempting to devise a general rule of apportionment when the contractual language did not support apportionment

in this case. Accordingly, I would reverse the court of appeals on this ground.