24CA1386 Garcia v Jefferson County 10-30-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1386
Jefferson County District Court No. 24CV30089
Honorable Andrew C. Poland, Judge
Honorable Meegan A. Miloud, Judge

Joanne Garcia,

Plaintiff-Appellant,

v.

Jefferson County R-1 School District,

Defendant-Appellee.

JUDGMENT AND ORDER AFFIRMED
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE TOW
Lum and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

Bachus & Schanker, LLC, Scot C. Kreider, Corey A. Holton, Denver, Colorado, for Plaintiff-Appellant

Caplan and Earnest LLC, Justin H. Miller, Boulder, Colorado, for Defendant-Appellee

¶ 1     Plaintiff, Joanne Garcia, appeals the district court's judgment dismissing her negligence action against defendant, Jefferson County R-1 School District (the District). She also appeals the court's post-dismissal order granting the District's request for attorney fees. We affirm the judgment and the order.

## I.     Background

¶ 2     The following facts are taken from Garcia's complaint.

¶ 3     Garcia fell and injured herself when she tripped over a two-inch protruding steel stanchion embedded in the floor of a middle school gym's doorway in the District. The purpose of a stanchion is to secure a door mullion. A mullion is a vertical steel bar in the middle of a double doorway, which allows the double doors to be locked or secured. It is designed to be removable, however, which permits use of the entire width of the doorway.

¶ 4     The mullion had been removed from the doorway of the gym to allow students to move large instruments into the gym in preparation for a band concert that day. The District failed to replace the mullion before arrival of guests for the band performance. Garcia tripped on the stanchion and was injured.

¶ 5     Garcia sued the District under the Colorado Premises Liability Act, § 13-21-115, C.R.S. 2025, and in the alternative brought a negligence claim.  The District moved to dismiss the complaint for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1), contending that it was immune from liability under the Colorado Governmental Immunity Act (CGIA), §§ 24-10-101 to -120, C.R.S. 2025.  Garcia sought discovery on the jurisdictional issue.  The district court denied Garcia's request for discovery and granted the District's motion to dismiss.

¶ 6     The District moved for an award of $23,023.25 in attorney fees under section 13-17-201, C.R.S. 2025, which the court awarded.

## II.     Motion to Dismiss

¶ 7     Garcia contends that the district court erred by dismissing her complaint.  We discern no error.

### A.     Standard of Review and Applicable Law

¶ 8     The applicability of immunity under the CGIA is an issue of subject matter jurisdiction to be determined by the district court in accordance with C.R.C.P. 12(b)(1).  *Fogg v. Macaluso*, 892 P.2d 271, 276 (Colo. 1995); *Young v. Jefferson Cnty. Sheriff*, 2012 COA 185, ¶ 7.  "When the alleged jurisdictional facts are in dispute, the trial

2

court should conduct an evidentiary hearing before ruling on the jurisdictional issue." *Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176, 1180 (Colo. 2001). But where, as here, the relevant facts are undisputed, the issue of governmental immunity is one of law, and the district court may rule on the jurisdictional issue without an evidentiary hearing.[1] *Id.* In such a case, we review the district court's jurisdictional ruling de novo. *Tidwell v. City & County of Denver*, 83 P.3d 75, 81 (Colo. 2003).

¶ 9     A plaintiff bears the burden of showing that jurisdiction exists, so, in the context of the CGIA, it must demonstrate that immunity has been waived. *Smokebrush Found. v. City of Colorado Springs*,

---

[1] Although Garcia requested discovery on factual issues such as whether doors were locked, when guests and students arrived, and when the mullion was removed, she did not request discovery on the design of the mullion-stanchion mechanism. In fact, she concedes that the mullion was designed to be removable. *See Herrera v. City & County of Denver*, 221 P.3d 423, 428 (Colo. App. 2009) (concluding that the trial court was not required to hold an evidentiary hearing to determine whether the city and county was immune under the CGIA from suit arising from a collision between a motorist's vehicle and a snowplow, inasmuch as the city and county did not contend on appeal that a factual question existed as to whether the snowplow met the statutory definition of "motor vehicle," and the issue of whether the snowplow could be a "motor vehicle" was one of law). Thus, no evidentiary hearing was required regarding the design of the door.

2018 CO 10, ¶ 21. Because the CGIA "derogates Colorado's common law," we strictly construe its immunity provisions, but we broadly construe its waiver provisions "in the interest of compensating victims of governmental negligence." *Id.* at ¶ 22.

¶ 10 Further, to the extent our review depends on an interpretation of the CGIA, we review such questions de novo. *See Springer v. City & County of Denver*, 13 P.3d 794, 798-99 (Colo. 2000). Our primary purpose when construing a statute is to ascertain and give effect to the General Assembly's intent. *Id.* at 799. We look first to the statute's language, giving words and phrases their plain and ordinary meanings. *Id.* If the statute is unambiguous, we need not conduct any further statutory analysis. *Id.*

¶ 11 Under the CGIA, public entities are generally immune from liability in "all claims for injury that lie in tort or could lie in tort." § 24-10-106(1), C.R.S. 2025. However, sovereign immunity is waived in actions for injuries that resulted from "[a] dangerous condition of any public building." § 24-10-106(1)(c). A dangerous condition is

> either a physical condition of a facility or the
> use thereof that constitutes an unreasonable
> risk to the health or safety of the public, which

is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity or public employee in constructing or maintaining such facility.

§ 24-10-103(1.3), C.R.S. 2025. The supreme court has interpreted this definition as creating a four-part test. *St. Vrain Valley Sch. Dist. RE-1J v. Loveland*, 2017 CO 54, ¶ 16 (citing *Springer*, 13 P.3d at 799). A dangerous condition exists when a plaintiff establishes that their injuries occurred because of (1) the physical condition of the public facility or use thereof, (2) which constituted an unreasonable risk to the health or safety of the public, (3) which was known to exist or should have been known to exist in the exercise of reasonable care, and (4) which was proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. *Id.*

¶ 12     A dangerous condition "shall not exist solely because the design of any facility is inadequate." § 24-10-103(1.3). Thus, as a threshold jurisdictional matter, a plaintiff must show that the dangerous condition arose due to governmental conduct, or lack thereof, in constructing or maintaining the condition, and not due

5

to the design alone. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1384 (Colo. 1997).

¶ 13    Maintenance is defined as "the act or omission of a public entity or public employee in keeping a facility in the same general state of repair or efficiency as initially constructed or in preserving a facility from decline or failure." § 24-10-103(2.5).  Further, maintenance does not include any duty to "modernize, modify, or improve the design or construction of [the] facility." *Id.*  By contrast, to design is "to conceive or plan out in the mind." *Swieckowski*, 934 P.2d at 1386 (citing Webster's Third New International Dictionary 611 (1986)).

¶ 14    Based on these definitions, an injury is the result of negligent maintenance when a dangerous condition "is allowed to *develop* subsequent to the initial design and construction," whereas an injury is the result of negligent design when the dangerous condition is "inherent in the design itself and is allowed to *persist* to the time of the injury." *Medina v. State*, 35 P.3d 443, 456 (Colo. 2001).  The scope of the public entity's duty, and the associated waiver, must therefore be measured by comparing the original condition of the facility to the condition of the facility when the

6

injury occurred. *Id.* at 448-49. "Only after making this determination can [we] ascertain whether the dangerous condition . . . developed through a lack of maintenance subsequent to the initial design and construction of the [facility], and thus, whether immunity has been waived." *Id.* at 449.

## B.    Analysis

¶ 15    Garcia concedes "that the facts are undisputed with respect to the nature of the door system and its intended uses." She alleged in her complaint that the mullion was removeable and, when it was removed, the two-inch stanchion protruded up from the floor into the doorway. The district court concluded that, if removal of the mullion created a dangerous condition by exposing the two-inch stanchion, the condition arose solely from inadequate design and not from the District's failure to maintain the door. Based on Garcia's complaint, we agree with this conclusion and reject Garcia's arguments to the contrary.

¶ 16    As an initial matter, we agree with the District that Garcia did not preserve her argument that it had a "ministerial" obligation to eliminate the trip hazard posed by the exposed stanchion because she never made this argument in the district court. Thus, we do

not address it.  *See Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21 ("It is axiomatic that in civil cases, issues not raised in or decided by the trial court generally will not be addressed for the first time on appeal.").  Instead, we turn to her preserved arguments.

¶ 17     Garcia contends that the mullion-stanchion mechanism exists in two states of efficiency.  In one state, the mullion is in place and the double doors latch and lock.  In the second state, the mullion is removed and the stanchion protrudes.[2]  She contends that by leaving the mullion-stanchion mechanism in the latter state of efficiency, the District failed to "maintain" the door in "the same general state of . . . efficiency as initially constructed."  We disagree.

¶ 18     But nothing in the record suggests whether the "original" state of efficiency was with the mullion in place or removed.[3]  Moreover, we do not read "the same general state of . . . efficiency as initially constructed" as imposing a "maintenance" obligation on the District

---

[2] Notably, Garcia does not allege that when the mullion is removed, the stanchion is supposed to be removed or altered in some other manner so that it does not protrude in a dangerous way.
[3] It does not appear that Garcia's outstanding discovery requests would have answered this question.

to default to one use of the design over the other. § 24-10-103(2.5). Rather, as noted, the District is only liable for failing to "maintain" with respect to a condition if that condition arose subsequent to the initial design of the door. *See Medina,* 35 P.3d at 456.

¶ 19 Garcia argues that removal of the mullion created a condition of the facility (or, perhaps more accurately, was a use thereof), which was such a subsequently occurring condition. But her argument proves too much because it essentially means any use of a design that involves two possible states of efficiency constitutes maintenance. This would essentially swallow the design exception altogether.

¶ 20 Garcia also contends that the district court broadly construed the word "design" to encompass not only the "conception" of the door, but also all conduct of the District that arguably falls within the scope of the design's function. She further argues that by so concluding, the district court read "solely" out of the part of the CGIA that provides that a dangerous condition "shall not exist *solely* because the design of any facility is inadequate." § 24-10-103(1.3) (emphasis added). In essence Garcia's argument is that, even though the design allowed for removal of the mullion,

the District was negligent for allowing the public to use the door with the mullion removed and the stanchion exposed.[4]

¶ 21    But the District used this function of the door specifically as it was designed.  The mullion was removed — as it was designed to be — so large instruments could be moved into the gym; it was not removed for the purpose of cleaning, repairing, or otherwise performing any maintenance on the mullion, the stanchion, or the door.  Thus, contrary to Garcia's contention, the condition (and use) of the mullion-stanchion mechanism at the time of her injury existed solely because of the door's design.

¶ 22    Alternatively, Garcia contends that the district court's order can be read as requiring some degradation from the "as designed" state in order to trigger the District's maintenance obligation.  We do not read the district court's order to say that.  The district court correctly recited the definition of maintenance in its order, and its subsequent analysis of whether the dangerous condition developed because of the District's lack of maintenance did not concern

_____

[4] It is difficult to distinguish Garcia's argument from a contention that the stanchion is a dangerous condition because it protrudes two inches above the floor when the mullion is removed — which is clearly a condition that is solely related to the design of the door.

whether the door had degraded or not. Rather, the court correctly found that the "exposed stanchion did not arise from a condition of the doorway that arose subsequent to the initial design but, rather was a design choice that persisted to the time of injury."

¶ 23 In short, human intervention caused the mullion to be removed. This intervention can be seen as either part of the mullion-stanchion design or not. If it is, then the situation was "solely" a result of the design and immunity applies. If it is not, then Garcia needed to show that the removal was a function of either negligent construction or maintenance, which she did not.[5]

¶ 24 Thus, the district court did not err by granting the motion to dismiss.

---

[5] We reject Garcia's argument that, in light of the district court's restriction on discovery, it is premature to resolve the issue of whether the removal of the mullion fell within the definition of maintenance. None of the requested discovery for, as Garcia describes it in her opening brief, the "design specifications of the doorway system" or the "policies and procedures related to removal" of the mullion would have further illuminated that issue. Moreover, the record sufficiently demonstrates that the mullion removal was not a maintenance function.

### III. Attorney Fees

¶ 25    Garcia contends that the district court erred by awarding the full amount of the District's attorney fees. We discern no error.

### A. Additional Background

¶ 26    After the district court dismissed the complaint, the District moved for an award of $23,023.25 in attorney fees under section 13-17-201. After both parties briefed the issue, the district court held an evidentiary hearing and awarded the District its requested attorney fees.

¶ 27    The court found that the hourly rates for defendants' attorneys were reasonable based on their expertise and experience, and that the hours they expended were reasonable. The court multiplied the rates by the hours expended to calculate $23,023.25 in attorney fees. The court then made findings as to why it was not making any adjustments to that amount, including that the amount of time spent was reasonable, this is a specialty area of law, this case precluded other work, the rates were customary in the locality, and the amount of purported damages was high and the results obtained were significant.

B.    Standard of Review and Applicable Law

¶ 28    An award of attorney fees under section 13-17-201 is mandatory when a district court dismisses an action under C.R.C.P. 12(b).  *Crandall v. City of Denver*, 238 P.3d 659, 662 (Colo. 2010); *US Fax L. Ctr., Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 517 (Colo. App. 2009).  But the award of attorney fees under the statute must be reasonable.  *Crow v. Penrose-St. Francis Healthcare Sys.*, 262 P.3d 991, 998 (Colo. App. 2011).

¶ 29    We review the reasonableness of an attorney fees award for an abuse of discretion.  *Planning Partners Int'l, LLC v. QED, Inc.*, 2013 CO 43, ¶ 12.  A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, and we will not overturn a district court's determination of a reasonable attorney fees award unless it is patently erroneous and unsupported by the evidence.  *Id.*

¶ 30    A district court makes an initial estimate of reasonable attorney fees by calculating the lodestar amount, which represents the number of hours reasonably expended on the case, multiplied by a reasonable hourly rate.  *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 18.  The court's calculation of the lodestar amount carries

13

with it a strong presumption of reasonableness. *Id.* The district court then has discretion to make upward or downward adjustments to the lodestar amount based on factors including the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, and awards in similar cases. *Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 147 (Colo. App. 1996); Colo. RPC 1.5.

### C. Analysis

¶ 31 Garcia contends that the district court failed to make factual findings related to the number of hours expended by the District's lawyers on its motion to dismiss. We disagree.

¶ 32 The district court's calculation of the lodestar amount carries with it a presumption of reasonableness, and its findings as to why it was not adjusting that amount upward or downward followed the required criteria: the time and labor required, the complexity of the action, that the work precluded other employment, the customary practice in the legal community regarding fees in similar cases, the amount in controversy involved and the results obtained, the

experience of the lawyers, and the value of the legal services to the client.  *See* Colo. RPC 1.5(a)(1).

¶ 33     Moreover, in conjunction with discussing these factors, the court specifically found at the hearing that the time spent by the District's lawyers was appropriate given the type of motion, which involved a specialty area of law that required a significant amount of research, evidence review, and site visits to properly brief.

¶ 34     Accordingly, we find no merit in Garcia's argument that the district court failed to make factual findings related to the number of hours expended by the District's lawyers on its motion to dismiss.  Thus, the district court did not err by awarding the District $23,023.25 in attorney fees.

## IV.  Appellate Attorney Fees

¶ 35     The District requests its appellate attorney fees under section 13-17-201.

¶ 36     A party that successfully defends an appeal of an action that was dismissed on a pretrial motion to dismiss under the CGIA is entitled to recover its reasonable appellate attorney fees under section 13-17-201.  *Wark v. Bd. of Cnty. Comm'rs*, 47 P.3d 711, 717 (Colo. App. 2002).  The District has prevailed on appeal, so we grant

15

its request.  *Creekside Endodontics, LLC v. Sullivan*, 2022 COA 145,

¶ 54.  Because the district court is better suited to conduct any

factfinding necessary to determine the reasonableness and

necessity of the fees, we exercise our discretion under C.A.R. 39.1

and remand the case to the district court to determine the amount

of the District's reasonable appellate attorney fees and costs.

## V.    Disposition

¶ 37    The judgment and order are affirmed, and the case is

remanded to the district court to determine the amount of the

District's reasonable appellate attorney fees and costs.

JUDGE LUM and JUDGE MOULTRIE concur.