2014 COA 1

### FIRST CITIZENS BANK & TRUST COMPANY, a North Carolina chartered commercial bank, Plaintiff–Appellee,

v.

### STEWART TITLE GUARANTY COMPANY, a Texas corporation; Stewart Title Company a/k/a Stewart Title Colorado, a Texas corporation, as successor by merger to Stewart Title of Colorado, Inc., a Colorado corporation d/b/a Stewart Title of Colorado—Aspen Division, Defendants–Appellants.

**Court of Appeals Nos. 11CA2639, 12CA0873 & 12CA1554**

Colorado Court of Appeals, Div. I.

Announced January 2, 2014

Gorrell Giles Gollata PC, Teryl R. Gorrell, Denver, Colorado; Friesen Lamb, LLP, Stephen M. DeHoff, Denver, Colorado, for Plaintiff–Appellee.

Sweetbaum Sands Anderson PC, Alan D. Sweetbaum, Denver, Colorado; Fulbright & Jaworski L.L.P., L. Poe Leggette, Allison Woolston, Denver, Colorado, Katherine D. Mackillop, Houston, Texas, for Defendants–Appellants.

Opinion by JUDGE LICHTENSTEIN

¶ 1 Defendant, Stewart Title Guaranty Company (Stewart), appeals from the trial court's judgment following a bench trial finding it had breached its title insurance contract with plaintiff, First Citizens Bank & Trust Company (FCB).[1] Stewart also appeals from the trial court's judgment awarding FCB attorney fees and costs. Stewart separately appealed these judgments, and we have consolidated the appeals, at its request, for the purposes of this opinion. We reverse the trial court's award of attorney fees to FCB for its lawsuit against Stewart and otherwise affirm its judgments.

## I. Background

¶ 2 In 2007, UWB issued a construction loan to Leathem S. Stearn to build a private residence on his property in Pitkin County. UWB had agreed to loan Stearn the money in exchange for a promissory note and deed of trust secured by the property. In connection with the loan, UWB requested a title insurance policy from Stewart.

¶ 3 Stewart's agent, Stewart Title Company (STC), discovered that record title to the property was vested in a company associated with Stearn (Ute). As a result, it issued a title commitment containing a requirement that Ute convey title to Stearn. This requirement was never satisfied.

¶ 4 Stewart issued a title insurance policy (the policy) stating the property was vested in Stearn and that the deed of trust was valid and enforceable. Ultimately, UWB closed the loan in-house, without an STC representative present. Thereafter, Stearn defaulted on the loan.

¶ 5 Because Stearn did not personally hold title to the property, rendering UWB's deed of trust invalid, UWB contacted Stewart seeking coverage for losses under the policy. Stewart issued a letter denying coverage based on an exclusion in the policy.

¶ 6 UWB initiated this action against Stewart and STC asserting breach of contract, bad faith, equitable estoppel, negligent mis-

---

1. This litigation was initiated by FCB's predecessor, United Western Bank (UWB). During this litigation FCB purchased UWB and assumed its interests and claims.

representation, and vicarious liability against Stewart and its agent.

¶ 7 UWB also initiated collateral litigation against Stearn, seeking to overcome the defective deed of trust. FCB subsequently acquired most of the assets and the liabilities of UWB, thereby becoming UWB's successor and the plaintiff in these actions. The collateral litigation is still pending.

¶ 8 The trial court granted summary judgment in favor of STC and dismissed it from the case. Following a bench trial, the trial court concluded that Stewart's asserted exclusion did not preclude coverage of FCB's claim. The court determined that Stewart waived policy exclusions and defenses not asserted in its denial of claims letter or answer. It ultimately entered judgment in favor of FCB on its breach of contract claim and awarded FCB $6,379, 196.10 in damages. However, the court entered judgment in favor of Stewart on FCB's other claims.

¶ 9 Stewart appeals the trial court's judgment on FCB's breach of contract claim. It also separately appeals the final judgment awarding FCB attorney fees.[2]

## II. The Policy

¶ 10 Stewart contends that the trial court erroneously held that Exclusion 3(a) of the policy did not bar coverage for FCB's (formerly UWB's) claim. We disagree.

### A. Standard of Review

¶ 11 A title insurance company's obligations depend on the terms of the insurance policy, and the interpretation of those terms is based upon principles of contract law. *Sims v. Sperry*, 835 P.2d 565, 568 (Colo.App.1992). Thus, we review the trial court's interpretation of the policy de novo. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo.2002) ("The interpretation of an insurance policy is a matter of law, which an appellate court reviews de novo.").

¶ 12 The words of a contract should be given their plain meaning according to common usage, and strained constructions should be avoided. *Id.* An insurance policy is ambiguous if it is susceptible of more than one reasonable interpretation. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo.2005). Any ambiguity in an insurance policy is construed in favor of providing coverage to the insured. *Id.*

¶ 13 The insurer bears the burden of establishing that an exclusion applies. *See Am. Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo.1991). In this regard, we defer to the trial court's credibility determinations and will not disturb its findings of fact unless they are so clearly erroneous as not to find support in the record. *See Page v. Clark*, 197 Colo. 306, 312–13, 592 P.2d 792, 796 (1979).

### B. Analysis

¶ 14 Stewart contends that FCB's claim is barred by Exclusion 3(a) of the policy, which provides:

The following matters are expressly excluded from coverage of the policy and the Company will not pay loss or damage, costs, attorney's fees or expenses, which arise by reason of: ... 3. Defects, liens, encumbrances, adverse claims, or other matters:

(a) created, suffered, assumed or agreed to by the insured claimant;

Specifically, Stewart asserts that because UWB closed the loan inhouse, it was required to obtain a deed from Ute conveying title to Stearn but did not do so. Consequently, it asserts that UWB created, suffered, assumed, or agreed to the defect for which it sought coverage, barring FCB's claims.

¶ 15 In *Sims v. Sperry*, a division of this court interpreted identical language found in Exclusion 3(a) of the policy. 835 P.2d at 568. There, the division concluded that the lan-

**2.** The trial court held an evidentiary hearing to determine the reasonable amount of attorney fees. Stewart appealed from the judgment following this hearing. FCB subsequently requested additional attorney fees, which the court granted. Because this subsequent order was entered after Stewart had filed its notice of appeal, depriving the trial court of jurisdiction, this court entered a limited remand for the trial court to reenter the second order.

guage of this exclusion was susceptible of two reasonable interpretations:

> Generally, the term "created" has been construed to require a conscious, deliberate, and sometimes affirmative act "intended to bring about the conflicting claim," in contrast to merely an inadvertent or negligent act.

> On the other hand, "created" also can be interpreted to mean ... a deliberate act which the insured intentionally undertook and which led to the defect, even though the insured did not necessarily intend to cause the defect.

> ...

> Similarly, the terms "suffered," "assumed", and "agreed to" imply intent to bring about the defect.

*Sims,* 835 P.2d at 570 (internal citations omitted). We agree with the *Sims* division.

■ ¶ 16 Because these terms are "reasonably susceptible to more than one meaning," we conclude that they are ambiguous. *Id.* Thus, we must construe the ambiguity in favor of the insured. *See Cary,* 108 P.3d at 290. Applying this construction, we conclude that Stewart was required to show that UWB made a conscious and deliberate act intended to bring about the conflicting claim. *Sims,* 835 P.2d at 570.

■ ¶ 17 Here, the trial court found that UWB and STC each had assumed that the other obtained the requisite conveyance deed transferring title from Ute to Stearn. Therefore, it concluded that UWB was, at most, negligent. The record supports this finding.

¶ 18 The record contains evidence that it was not customary for UWB employees to prepare conveyance documents for property to be held as security for loan transactions, and instead UWB typically relied on title insurance companies to do so. It also contains evidence that UWB failed to confirm its assumption that STC would perform the title search and prepare the conveyance deed.

¶ 19 Thus, because the record supports the trial court's finding that UWB, although negligent, did not intend to cause the defect, we conclude that the trial court did not err by holding that Exclusion 3(a) of the policy did not bar coverage.[3]

## III. Remaining Defenses

¶ 20 Stewart next contends that the trial court erred in holding that it waived its additional asserted defenses. Assuming, without deciding, that these defenses were not waived, we conclude that they are nonetheless inapplicable. *Blood v. Qwest Servs. Corp.,* 224 P.3d 301, 329 (Colo.App.2009) (we may affirm on any ground supported by the record).

### A. Standard of Review

■ ¶ 21 An insurance policy is a contract, the interpretation of which is a matter of law that we review de novo. *State Farm Mut. Auto. Ins. Co. v. Stein,* 940 P.2d 384, 387 (Colo.1997). Both the insured and the insurer are bound by the terms of the policy, unless those terms are waived or annulled. *Id.*

### B. "Foreclosure First Doctrine"

¶ 22 Stewart's asserted "foreclosure first doctrine" provides, in essence:

> An insured mortgagee has not suffered an identifiable loss unless and until it forecloses its insured deed of trust and a title defect reduces the value of the property, thereby preventing the mortgagee from recouping its loan amount upon resale. If a title defect exists, but the value of the property is nevertheless sufficient to·pay the mortgagee its loan amount, then there is no damage compensable under the loan policy.

2 Gregory J. Notarianni, *Colo. Practice Series: Methods of Practice* § 63:3, at 271 (Cathy S. Krendl ed., 6th ed., 2012). Based on

---

**3.** Stewart relies on out-of-state authority to contend that Exclusion 3(a) bars recovery when an insured's intentional act creates a defect, even if the insured does not intend to create that defect. *See, e.g., First Am. Title Ins. Co. v. Action Acquisi-* *tions, LLC,* 218 Ariz. 394, 187 P.3d 1107, 1113 (2008). Even were we to apply this standard, the trial court found that a negligent act created the defect, not an intentional one. Therefore, the cases Stewart relies on are inapposite.

this doctrine, Stewart advances two policy limitations.

### 1. Policy Limitation 8(b)

¶ 23 Stewart asserts that, pursuant to Limitation 8(b), it is not subject to liability for any loss incurred by FCB unless and until the collateral litigation results in a final determination adverse to the lien. We disagree.

¶ 24 Limitation 8(b) of the policy provides: In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

This limitation, as the trial court noted, is an embodiment of the foreclosure first doctrine.

¶ 25 Although there are no Colorado appellate cases addressing this issue, the Maryland Court of Special Appeals confronted an identical claim made by Stewart, under a similar provision.[4] *See Stewart Title Guar. Co. v. West*, 110 Md.App. 114, 676 A.2d 953, 963 (1996). There, Stewart claimed that summary judgment against it was premature since the insured's litigation against all defendants had not been finally resolved. *Id.* The court disagreed, holding that the limitation only applies when the adverse nature of the title is in dispute, and therefore does not apply when it is conceded that the insured's title is defective. *Id.* In such circumstances, "there is thus no need for a court determination 'adverse to the title.'" *Id.* Because the title defects were conceded and Stewart's interpretation "would have the effect of reading the 'adverse to the title' language out of the policy," the court rejected Stewart's defense based on the limitation. *Id.* at 964.

¶ 26 We agree with the construction of the policy in *West* and likewise decline to apply the limitation when an insurer concedes the deed of trust is defective. Here, in its open-

ing brief, Stewart acknowledges that the deed of trust was defective at "the moment it was recorded." Consequently, we conclude that Limitation 8(b) is inapplicable. *Id.*; *see also Endruschat v. Am. Title Ins. Co.*, 377 So.2d 738, 743 (Fla.Dist.Ct.App.1979) (reasoning that language from a similar policy provision "is but sophistry" if it is interpreted to mean that the insured must first file suit to clear or defend the title when all the parties agree that title is defective).

### 2. Actual Loss

¶ 27 Stewart next contends that in order to measure any loss suffered by FCB, FCB must foreclose on the property to determine whether the value of property satisfies the outstanding loan. We reject this contention.

¶ 28 As pertinent here, the policy insures "against loss or damage" resulting from the "invalidity or unenforceability of the lien of the insured mortgage upon the title."

¶ 29 Stewart acknowledges that the deed of trust was invalid at its inception. Thus, FCB could not, as a practical matter, foreclose on the property. *See In re Evans*, 460 B.R. 848, 899–900 (Bankr.S.D.Miss.2011) ("[A]s a practical matter, [the insured] never could have foreclosed on the deed of trust because there was no collateral...."). Indeed, because UWB issued a loan that was not secured with collateral, and Stearn has defaulted on that loan, FCB has suffered a loss. Consequently, the trial court did not err when it awarded the full amount owed under the promissory note.

¶ 30 We are not persuaded otherwise by Stewart's assertion that an award of this loss would permit FCB to receive double recovery if it prevails in its collateral litigation. We note, as did the trial court, that Stewart could seek subrogation. *See Levy v. Am. Family Mut. Ins. Co.*, 293 P.3d 40, 45 (Colo. App.2011) ("Subrogation serves the purpose of limiting the possibility of a double recovery by the insured ...." (quoting *W. Cas. &*

---

4. The policy limitation in *West* provided: "No claim shall arise or be maintainable under this policy ... in the event of litigation until there has been a final determination by a court of compe-

tent jurisdiction, and disposition of all appeals therefrom, adverse to the title, as insured[.]" 676 A.2d at 963.

*Sur. Co. v. Bowling,* 39 Colo.App. 357, 359, 565 P.2d 970, 971 (1977))).

## IV.  Attorney Fees

¶ 31 Stewart contends the trial court erred in awarding attorney fees to FCB. We affirm the trial court's award of attorney fees associated with FCB's collateral litigation against the borrower, but conclude that the trial court did not have a basis to award attorney fees to FCB for its suit against Stewart.

### A.  Standard of Review

¶ 32 Whether attorney fees are recoverable is a question of law, which we review de novo. *See Huizar,* 52 P.3d at 818 (reviewing de novo whether an insurance policy permitted attorney fees); *US Fax Law Ctr., Inc. v. Henry Schein, Inc.,* 205 P.3d 512, 515 (Colo.App.2009) (reviewing de novo any statutory interpretation or legal conclusion that provides a basis for a fee award).

### B.  Collateral Litigation

¶ 33 In its briefs, Stewart challenged the award of attorney fees associated with the collateral litigation. However, during oral argument, counsel for Stewart abandoned this challenge, clarifying that Stewart would be responsible for the attorney fees associated with the collateral litigation and that the "attorney fees issue goes only to the attorney fees out of the breach of contract case, which is the main case here." Accordingly, the trial court's judgment, insofar as it awarded FCB its attorney fees associated with the collateral litigation, is affirmed without comment. *See Crouse v. City of Colo. Springs,* 766 P.2d 655, 657 n. 2 (Colo.1988).

### C.  Suit Against Stewart

¶ 34 Stewart contends that the trial court erroneously awarded FCB attorney fees associated with its suit against it. We agree.

¶ 35 Colorado follows the "American Rule," which requires each party in a lawsuit to bear its own legal expenses. *Huizar,* 52 P.3d at 818. Thus, in the absence of an express statute, court rule, or contractual provision to the contrary, attorney fees generally are not recoverable by the prevailing party in a contract or tort action. *Id.*

¶ 36 Despite this, the trial court awarded FCB its attorney fees associated with its suit against Stewart. The court based this award exclusively on *Hedgecock v. Stewart Title Guar. Co.,* 676 P.2d 1208, 1210–11 (Colo.App. 1983).

¶ 37 In *Hedgecock,* a division of this court concluded, apparently as a matter of public policy, that an insured was entitled to attorney fees as part of the damages for breach of a title insurance contract. *Id.* The division reasoned, based on an earlier opinion from another division of this court, that an award of attorney fees was necessary to restore the plaintiff "to the position she would have occupied had the company honored its contract of insurance in the first instance." *Id.* at 1211 (citing *Allstate Ins. Co. v. Robins,* 42 Colo. App. 539, 541, 597 P.2d 1052, 1053 (1979)).

¶ 38 However, our supreme court rejected a nearly identical argument in *Huizar.* There, in addressing whether a court may award attorney fees in an action to recover uninsured motorist benefits, the court held that the American Rule controlled. *See Huizar,* 52 P.3d at 820–21. The supreme court observed that "the creation of a new exception [to the American Rule] is 'a function better addressed by the legislative [rather] than the judicial branch of government.'" *Id.* (quoting *Bernhard v. Farmers Ins. Exch.,* 915 P.2d 1285, 1287–88 (Colo.1996)). It also clarified, as it had in a previous case, that an award of attorney fees should not be granted based on the equities of an individual case. *Id.* (citing *Bunnett v. Smallwood,* 793 P.2d 157, 161 (Colo.1990)).

¶ 39 We recognize that the facts of *Hedgecock* are very similar to the case before us. But we are not bound by the decision of another division of this court. *Valentine v. Mountain States Mut. Cas. Co.,* 252 P.3d 1182, 1195 (Colo.App.2011). And, in light of *Huizar,* we are persuaded that the American Rule controls. We reach this conclusion for three reasons.

¶ 40 First, while our supreme court has not expressly overruled *Hedgecock,* the court has rejected the very reasoning used in that case.

*See Huizar,* 52 P.3d at 821 (courts should not base an award of attorney fees on the equities of a case); *Bunnett,* 793 P.2d at 161 (same). Indeed, the court of appeals' opinion that was reversed by the *Huizar* court expressly relied on the rationale from *Robins* and *Hedgecock. See Huizar v. Allstate Ins. Co.,* 32 P.3d 540, 543–44 (Colo.App.2000) (citing *Hedgecock* and concluding that attorney fees "were justified under the *Robins* rationale"), *rev'd,* 52 P.3d 816.

¶ 41 Second, we have not found any appellate case following *Hedgecock* since *Huizar* was announced. To be sure, a division of this court previously relied on *Hedgecock* to uphold or permit an attorney fee award in title insurance cases involving a breach of the duty to defend. *See Wheeler v. Reese,* 835 P.2d 572, 577 (Colo.App.1992); *Sims,* 835 P.2d at 572; *but see Rhodes v. Copic Ins. Co.,* 819 P.2d 1060, 1062 (Colo.App.1991) (declining to extend *Hedgecock* to the plaintiff's action for declaratory relief). However, after *Huizar, Hedgecock's* continued validity has consistently been questioned. *See Cont'l W. Ins. Co. v. Heritage Estates Mut. Hous. Ass'n, Inc.,* 77 P.3d 911, 915 (Colo.App.2003) (questioning whether *Hedgecock* remains good law in light of *Huizar*); *Stewart Title Guar. Co. v. Tilden,* 181 P.3d 94, 99 n. 2 (Wyo.2008) (noting Colorado has "abandoned *Hedgecock's* allowance of attorney fees"); *see also Bernal v. Lumbermens Mut. Cas. Co.,* 97 P.3d 197, 203 (Colo.App.2003) (noting that *Robins,* which *Hedgecock* relied upon, was overruled sub silentio by *Huizar* ).

¶ 42 Finally, notwithstanding FCB's implication to the contrary, *Hedgecock* did not create a well-established exception to the American Rule in Colorado. *See, e.g., Huizar,* 52 P.3d at 821 n. 2 (acknowledging exceptions to the American Rule recognized in Colorado, but not listing *Hedgecock* ); 6 David R. DeMuro, *Colo. Practice Series: Civil Trial Practice* § 13.4, at 652–55 (2d. ed., 2001) (listing exceptions to the American Rule, but not listing an exception for breach of title insurance contracts); *but see* 1 Joyce Palomar, *Title Ins. Law* § 10:20 (2012–13 ed.) ("Despite the old hornbook rule, the modern trend in insurance law is that, even in the absence of a statute, insureds who have had to sue to force the insurer to perform its obligations are awarded attorney[ ] fees as part of their damages resulting from the covered matter.").

¶ 43 Additionally, we reject FCB's assertion that legislation enacted in 2008 which (1) left the common law action of bad faith breach of insurance contract intact, § 10–3–1114, C.R.S.2013; and (2) excluded title insurers from its application, § 10–3–1115(6), C.R.S.2013, evidenced a legislative intent to affirm the common law rule of *Hedgecock.* In enacting sections 10–3–1115 and –1116, C.R.S.2013, the General Assembly created a new cause of action for unreasonable delay or denial of insurance benefits, "in addition to and different from an action alleging breach of the common law duty of good faith and fair dealing." *Kisselman v. Am. Family Mut. Ins. Co.,* 292 P.3d 964, 973 (Colo.App. 2011).

¶ 44 The legislative history makes clear that the reason for the exclusion of title insurers from this new cause of action was not related to attorney fees, but, rather, to the fact that the title insurance industry does not have a history of delaying or denying claims. *See* Second Reading of H.B. 08–1407 before the House, 66th Gen. Assemb., 2d Sess. (Apr. 29, 2008). Thus, we decline to construe the exclusion of title insurers from sections 10–3–1115 and –1116 as implying that the General Assembly intended to approve the ruling of *Hedgecock.*

¶ 45 Because our supreme court has expressly rejected the very reasoning used in *Hedgecock,* we are compelled to conclude that the trial court's award of attorney fees based solely on the authority of *Hedgecock* must be reversed.

¶ 46 We are not persuaded otherwise by FCB's contention that it was entitled to the attorney fees as consequential or special damages for its breach of contract claim. Consequential or special damages must be specifically pleaded in the complaint pursuant to C.R.C.P. 9(g). *See Lawry v. Palm,* 192 P.3d 550, 568–69 (Colo.App.2008). A request for attorney fees in a general prayer for relief does not plead special damages. *Id.* at 569.

¶ 47 Here, FCB's complaint did not identify attorney fees as special damages incurred as a result of Stewart's conduct. Rather, the complaint requested attorney fees, as part of its general prayer for relief, based on "the Note and Deed of Trust or as allowed by law." Thus, FCB is precluded from recovering those fees as damages. *Id.*

¶ 48 The parties agree that no other contractual or statutory provision authorizes the award of attorney fees. Consequently, we reverse the trial court's award to FCB for the attorney fees associated with its lawsuit against Stewart.

## V. Costs

¶ 49 Stewart next contends that the trial court abused its discretion in awarding FCB costs. We perceive no abuse of discretion.

¶ 50 Generally, "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." C.R.C.P. 54(d). For the purpose of awarding costs, a "prevailing party" is one which prevails on a significant issue in the litigation and derives some of the benefits sought by the litigation. *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230 (Colo.2004). We review an award of costs for an abuse of discretion, and will only disturb the award if it is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 51 Stewart contends that the trial court abused its discretion by awarding three categories of costs.

¶ 52 First, Stewart asserts that costs for depositions and expert fees it alleges were incurred solely for FCB's bad faith and punitive damages claims should not have been awarded because FCB did not prevail on those claims. The trial court found that "all of the witnesses, including the experts for both sides ..., gave testimony relevant not just to bad faith, but also to coverage issues, such as industry understanding of potentially applicable exclusions." The trial court was in the best position to evaluate the necessity of each witness's testimony, *see Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 389 (Colo.1994), and the record supports its findings. Accordingly, we conclude the trial court did not abuse its discre-

tion in awarding these costs. *See also Cherry Creek Sch. Dist. v. Voelker*, 859 P.2d 805, 813 (Colo.1993) (costs for a deposition "reasonably necessary for the development of the case in light of facts known to counsel at the time it was taken" may be awarded); *cf. Planning Partners Int'l v. QED, Inc.*, 2013 CO 43, ¶ 27, 304 P.3d 562, 569 (discussing attorney fees; apportionment not required when the issues in the case were " 'sufficiently intertwined and inter-related' ").

¶ 53 Second, Stewart asserts that costs associated with FCB's claims against STC should not have been awarded because STC was dismissed from the case. The trial court found that "the facts underlying the claims against [STC] and [Stewart] were inextricably intertwined, making it impractical and unreasonable to apportion [the costs] between them." It also found that the claims against STC were brought because Stewart had refused to concede agency until trial. The trial court concluded that by losing on summary judgment—which resulted in the dismissal of STC—FCB "essentially prevailed on the agency argument, setting the stage for the trial concession of the issue." The record supports these findings, and we perceive no abuse of discretion in the trial court's decision to award these costs. *See Archer*, 90 P.3d at 231 ("When a case involves many claims, some of which are successful and some of which are not, it is left to the sole discretion of the trial court to determine which party, if any, is the prevailing party and whether costs should be awarded."); *cf. Planning Partners Int'l*, 304 P.3d at 569.

¶ 54 Finally, Stewart asserts that costs associated with having a court reporter record the trial proceedings and obtaining a subsequent transcript were not necessary and should not have been awarded. The trial court found that all of the costs FCB requested, with the exception of "trial technology" costs, were reasonable and necessarily incurred in litigation of its case against Stewart. Generally, a prevailing party may recover the costs of a transcript. *See* § 13–16–122(1)(d), C.R.S.2013. And, the court may award other costs necessary for a case.

*See Cherry Creek Sch. Dist.,* 859 P.2d at 813–14 (section 13–16–122 is illustrative rather than exclusive; upholding award of deposition costs reasonably necessary for the development of the case); *GF Gaming Corp. v. Taylor,* 205 P.3d 523, 526 (Colo.App.2009) (upholding award of costs "reasonably incurred" in the case). Because the court reporter costs were reasonably incurred to record the trial proceedings and produce a transcript, we perceive no abuse of discretion in the trial court's award of these costs.

## VI. Appellate Attorney Fees

¶ 55 We deny FCB's C.A.R. 39.5 request for appellate attorney fees and costs. FCB asserts that it is entitled to attorney fees on appeal because it was awarded attorney fees in the trial court, and it is defending that judgment on appeal. Because we conclude that FCB was not entitled to attorney fees resulting from its suit against Stewart, we likewise conclude that it is not entitled to attorney fees on appeal.

## VII. Conclusion

¶ 56 We conclude that the exclusion Stewart relied on to deny coverage does not preclude FCB's breach of contract claim. We likewise conclude that the additional policy defenses raised by Stewart do not defeat FCB's claim. Finally, we conclude that the trial court could not award FCB attorney fees for its action against Stewart.

¶ 57 We reverse the trial court's award of attorney fees to FCB for its lawsuit against Stewart. The judgments are otherwise affirmed.

JUDGE TAUBMAN and JUDGE MILLER concur.