2014 COA 70

Arnold A. CALDERON,
Plaintiff-Appellant,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Defendant-Appellee.

Court of Appeals No. 13CA1185

Colorado Court of Appeals,
Div. V.

Announced May 22, 2014

Franklin D. Azar & Associates, P.C., Tonya L. Melnichenko, Robert O. Fischel, Aurora, Colorado, for Plaintiff–Appellant

Sutton Booker P.C., Debra K. Sutton, Jacquelyn S. Booker, Katie B. Johnson, Littleton, Colorado, for Defendant–Appellee

White and Steele, P.C., Joel N. Varnell, Denver, Colorado, for Amicus Curiae Colorado Defense Lawyers Association

Opinion by JUDGE HAWTHORNE

¶ 1 Plaintiff, Arnold A. Calderon, appeals the trial court's order reducing his judgment, entered on a jury verdict, by $5000 to set off medical payments previously made to him by defendant, American Family Mutual Insurance Company.

¶ 2 This case raises an issue of first impression in Colorado: Under sections 10–4–609(1)(c) and 10–4–635(3)(b)(II), C.R.S.2013, may an insurer reduce the amount of uninsured/underinsured motorist (UM/UIM) benefits due its insured by the amount of medical payment (MedPay) benefits it has already paid the insured, when the insured's UM/UIM coverage is not impaired by such a setoff?

¶ 3 We conclude that an insurer may do so, consistent with Colorado statutes and public policy, and, accordingly, we affirm.

## I.   Factual and Procedural Background

¶ 4 The material facts are not in dispute. In 2010, Calderon sustained multiple injuries in an automobile accident with an uninsured driver, requiring him to seek medical treatment and miss work.

¶ 5 At the time of the accident, Calderon was insured by American Family under an insurance policy providing a total of $300,000 in UM/UIM coverage and $5000 in MedPay coverage.[1] The policy's UM/UIM provision included the following relevant terms:

C.   INSURING AGREEMENT

1. [American Family] will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle.

---

1. The record suggests that Calderon purchased multiple policies providing $50,000 each in UM/UIM coverage, and $5000 total in MedPay coverage, from American Family. The parties differ

. . .

E.   LIMITS OF LIABILITY

. . .

3. No one will be entitled to receive duplicate payments for the same elements of loss. Any amount [American Family] pay[s] under this Part to or for an insured person will be reduced by any payment made to that person under any other Part of this policy. In no event shall a coverage limit be reduced below any amount required by law.

¶ 6 Following the accident, American Family paid Calderon $5000 under the policy's MedPay provision. Calderon filed a claim under the UM/UIM provision, but the parties could not agree on the benefit amount due. Consequently, Calderon filed suit for breach of contract, violation of section 10–3–1115, C.R.S.2013 (prohibiting unreasonable delay or denial of payment on insurance claims), and breach of the duty of good faith and fair dealing.

¶ 7 A jury returned a verdict of $68,338.97 in favor of Calderon, including $34,394.65 for past medical expenses. The trial court reduced the amount awarded by $5000 to set off the medical payments Calderon had already received. After adding prejudgment interest, the court entered judgment against American Family in the amount of $77,459.

## II.   Discussion

### A.   Standard of Review

¶ 8 Statutory construction is a legal issue which we review de novo. *Byerly v. Bank of Colo.*, 2013 COA 35, ¶ 13, 2013 WL 979373. In construing a statute, we give effect to the General Assembly's intent. *Qwest Corp. v. City of Northglenn*, 2014 COA 55, ¶ 9, 2014 WL 1647654. We look first to the statute's language, and give words their plain and ordinary meanings. *People in Interest of O.C.*, 2012 COA 161, ¶ 19, 312 P.3d 226, *aff'd*, 2013 CO 56, 308 P.3d 1218. "If the statutory language is clear and unambiguous, we do

---

on the number of policies purchased, but agree on the amount of coverage. For the sake of simplicity, in this opinion, we refer to a single policy.

not look beyond the plain language and must apply the statute as written." *Byerly*, ¶ 14 (citing *Yale v. AC Excavating, Inc.*, 2013 CO 10, ¶ 13, 295 P.3d 470).

¶ 9 We read a statute as a whole to give "consistent, harmonious, and sensible effect to all its parts." *Lujan v. Life Care Ctrs. of Am.*, 222 P.3d 970, 973 (Colo.App.2009). And, "when interpreting two statutory sections, we must attempt to harmonize them to give effect to their purposes and, if possible, reconcile them so as to uphold the validity of both." *Gonzales v. Allstate Ins. Co.*, 51 P.3d 1103, 1106 (Colo.App.2002).

¶ 10 Finally, we construe an insurance contract's terms de novo. *First Citizens Bank & Trust Co. v. Stewart Title Guar. Co.*, 2014 COA 1, ¶ 11, 320 P.3d 406. In doing so, we "employ[ ] 'well-settled principles of contractual interpretation,'" construing the language to fulfill the parties' intent and resolving "ambiguities in favor of the insured." *Jordan v. Safeco Ins. Co. of Am., Inc.*, 2013 COA 47, ¶ 13 (quoting *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo.2002)).

### B. Reduction of UM/UIM Benefits

¶ 11 Calderon first contends that he was entitled to the full amount awarded by the jury's verdict because sections 10–4–609(1)(c) and 10–4–635(3)(b)(II) prohibited the trial court from setting off his UM/UIM benefits by the amount of MedPay benefits he received. We disagree.

¶ 12 In *Levy v. American Family Mutual Insurance Co.*, 293 P.3d 40, 46 (Colo.App. 2011), a division of this court concluded that an insurer's deducting medical payments it had made to its insured did not unlawfully diminish the insured's available UM/UIM benefits. The division discerned two principles from our supreme court's precedents: "(1) setoff is not allowed where the benefits are impaired; and (2) setoff is allowed to prevent a double recovery." *Id.* at 48. It reasoned that, "[w]here a double recovery is involved, by definition, an insured is not deprived of any benefit of coverage." *Id.* However, the division declined to address arguments relying on sections 10–4–609 or 10–4–635(3)(b), both of which had recently been amended when *Levy* was decided. *Id.* We

conclude that neither section 10–4–609(1)(c) nor section 10–4–635(3)(b)(II), as applied to the circumstances here, alters the rule that a setoff is allowed to prevent a double recovery when the amount of UM/UIM coverage available is not reduced.

¶ 13 Section 10–4–609(1)(c) provides, in relevant part:

[UM/UIM coverage] shall be in addition to any legal liability coverage and shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of the damages sustained, excluding exemplary damages, up to the maximum amount of the coverage obtained pursuant to this section.... *The amount of the coverage available* pursuant to this section *shall not be reduced by a setoff from any other coverage, including, but not limited to,* legal liability insurance, *medical payments coverage,* health insurance, or other uninsured or underinsured motor vehicle insurance.

(Emphasis added.)

¶ 14 Section 10–4–635(3)(a) denies insurers providing medical payments coverage "a right to recover against an owner, user, or operator of a motor vehicle, or against any person or organization legally responsible for the acts or omissions of such person, in any action for damages for benefits paid under such medical payments coverage." It also denies "a direct cause of action against an alleged tortfeasor for benefits paid under medical payments coverage." Section 10–4–635(3)(b)(II) specifies that

nothing in [section 10–4–635(3) ] shall be construed to ... [p]revent a person to whom benefits are paid under medical payments coverage from obtaining recovery of benefits available under uninsured motorist coverage pursuant to section 10–4–609....

¶ 15 Calderon argues that these statutes, read together, "express a legislative intent and public policy to prevent insurance companies from using a MedPay setoff to reduce UM/UIM benefits." According to Calderon, the trial court contravened the legislature's intent by "undisputedly reduc[ing] the benefits that Calderon should have recovered."

So, Calderon argues, despite his insurance policy's explicit prohibition against "duplicate payments for the same elements of loss," sections 10–4–609(1)(c) and 10–4–635(3)(b)(II) statutorily guaranteed him the full amount of the jury's verdict in addition to the MedPay benefits he had already received. We are not persuaded.

¶ 16 Calderon's argument incorrectly equates the term "coverage" with the term "benefit." Under section 10–4–609(1)(c), an insurer may not reduce UM/UIM *coverage* by a setoff from other coverage, including medical payments coverage. Coverage, in the insurance context, means "[i]nclusion of a risk under an insurance policy; the risks within the scope of an insurance policy." *Black's Law Dictionary* 422 (9th ed. 2009); *see also* § 10–4–620, C.R.S.2013 (insurers must provide, among other things, a minimum of $25,000 in coverage to any one person, and $50,000 to all persons, for injury or death arising from a motor vehicle accident); § 10–4–621(1), C.R.S.2013 (insurers may offer policies providing coverage more extensive than the minimum); *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 174 (Colo.2001) ("[I]f an insured's damages exceed the limits of the tortfeasor's liability coverage, an injured insured may receive compensation from her own policy to cover the remaining portion of her damages, *up to the limits of her UM/UIM insurance*." (emphasis added)).

¶ 17 In contrast, a benefit, in the same context, means "a cash payment or service provided for under an … insurance policy." *Webster's Third New International Dictionary* 204 (2002); *see also Kral v. Am. Hardware Mut. Ins. Co.*, 784 P.2d 759, 765 (Colo. 1989) ("[T] he General Assembly intended uninsured motorist coverage to provide an insured with benefits to the extent necessary to recover for loss caused by a negligent and financially irresponsible motorist, subject to policy limits."). Thus, "coverage" refers to the upper limit for which an insurer may be liable, while "benefit" refers to the actual payments made under the policy.

¶ 18 Here, Calderon's policy included $300,000 in UM/UIM coverage and $5000 in MedPay coverage. However, as the jury found, Calderon was only entitled to $68,338.97 in benefits from American Family. So, while the trial court reduced Calderon's UM/UIM *benefits* by $5000 by setting off the MedPay *benefits* he had already received, it did not alter his UM/UIM *coverage*, which remained at $300,000. Consequently, the setoff did not violate section 10–4–609(1)(c).

¶ 19 Nor did the setoff violate section 10–4–635(3)(b)(II). Section 10–4–635(3)(a), by its plain language, applies only to an insurer's right to recover against alleged tortfeasors—phrased differently, the section exclusively concerns an insurer's right of subrogation. *Am. Family Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 323 (Colo.2009) ("Subrogation is defined as the 'substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant.'" (citing Dan B. Dobbs, *Law of Remedies* § 4.3(4) (2d ed. 1976))). Section 10–4–635(3)(b)(II), on which Calderon relies for the proposition that paying MedPay benefits cannot prevent an individual from obtaining the full measure of UM/UIM benefits, again applies only in the context of subrogation. *See* § 10–4–635(3)(b)(II) ("Nothing in this subsection (3) shall be construed to . . . .").

¶ 20 Accordingly, the trial court did not err when it reduced Calderon's jury award by $5000 to set off MedPay benefits that American Family had already paid him.

## C. Public Policy Arguments

¶ 21 Calderon contends that the insurance policy's setoff provision is nevertheless void as against public policy for three additional reasons: (1) the policy, as well as section 10–4–609(1)(c), required American Family to pay all damages that he could have recovered from the uninsured driver; (2) the contract exception to the collateral source rule's post-verdict setoff rule prohibited American Family from introducing evidence of the MedPay payments; and (3) he paid a separate premium for MedPay coverage but received no additional benefits. Again, we disagree.

¶ 22 In Colorado, if an insurance "policy provision violates public policy by attempting to 'dilute, condition, or limit statutorily man-

dated coverage,' then it may be void and unenforceable." *DeHerrera*, 30 P.3d at 173 (quoting *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60 (Colo.1990)). For the following reasons, we reject Calderon's arguments that the insurance policy diluted, conditioned, or limited his statutorily mandated coverage.

### 1. Policy Language and Section 10–4–609(1)(c)

¶ 23 First, we reject Calderon's argument that either the policy or section 10–4–609(1)(c) requires American Family to pay his medical expenses twice.

¶ 24 Calderon argues that the policy, by its terms, requires American Family to pay him precisely what he could have recovered from the uninsured driver. And because, according to Calderon, the uninsured driver would have been liable for the full amount of his damages, regardless of any MedPay payments made to him by an insurer, American Family is similarly liable for the full amount, even after having paid him $5000 in MedPay benefits. We are not persuaded.

¶ 25 In *Kral*, the supreme court addressed a similar argument and rejected it:

> The General Assembly has established that a person who purchases uninsured motorist coverage and sustains loss caused by the negligent conduct of an uninsured motorist is entitled to the benefits of such coverage to the extent necessary to fully compensate the insured for the loss, subject to the limits of the insurance contract. *However, the General Assembly did not intend to grant windfall profits to insureds by authorizing them to obtain double recovery for the same loss.*

784 P.2d at 766 (emphasis added).

¶ 26 Notably, in this case, the policy expressly precludes "duplicate payments for the same elements of loss." Under the policy's plain language, Calderon could not be entitled to *total* payment from American Family that exceeded what he could have legally recovered from the uninsured driver—here, as the jury found, $68,338.97. Even if the policy did not expressly preclude duplicate payments, the *Levy* division decided that such limiting language is not required. *See* 293 P.3d at 45 ("We conclude that ... no specific policy language is required for [the insurer] to avoid making duplicative payments.").

¶ 27 Calderon also argues that section 10–4–609(1)(c) requires American Family to pay the full amount of UM/UIM benefits because UM/UIM coverage "shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of the damages sustained." As we concluded in Part II.B above, the trial court's reduction of Calderon's award did not violate section 10–4–609(1)(c).

### 2. Collateral Source Rule

■ ¶ 28 Second, we reject Calderon's argument that the contract exception to the collateral source rule's post-verdict setoff rule allows double recovery.

¶ 29 In Colorado, the collateral source rule has two parts: (1) a preverdict evidentiary component, codified at 10–1–135(10)(a), C.R.S.2013; and (2) a post-verdict setoff rule, codified at section 13–21–111.6, C.R.S.2013. *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 2012 CO 30M, ¶ 13 & n.2, 280 P.3d 649; *see also Smith v. Jeppsen*, 2012 CO 32, ¶¶ 13–19, 277 P.3d 224 (section 10–1–135(10)(a) unambiguously codifies the preverdict component of the collateral source rule); *Smith v. Kinningham*, 2013 COA 103, ¶ 16, 2013 WL 3427266 (same). Because the parties stipulated to the amount of MedPay benefits Calderon had received, and evidence of that payment was not presented to the jury, only the post-verdict setoff rule is at issue here. Consequently, we do not consider Calderon's arguments as they relate to the pre-verdict evidentiary component.

¶ 30 The post-verdict setoff rule "requires the trial court to reduce a successful plaintiff's verdict as a matter of law by the amount the plaintiff 'has been or will be wholly or partially indemnified or compensated for his loss by any other person, corporation, insurance company or fund in relation to the injury ... sustained.'" *Wal–Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶ 14, 276 P.3d 562 (quoting § 13–21–111.6). The contract exception to this rule provides that a

court may not "reduc[e] a plaintiff's verdict by the amount of indemnification or compensation that the plaintiff has received, or will receive in the future, from 'a benefit paid as a result of a contract entered into and paid for by or on behalf of' the plaintiff." *Id.* at ¶ 15 (quoting § 13–21–111.6).

¶ 31 Here, Calderon asserts that, because the contract exception would have prevented the trial court from reducing his jury award in a trial against the uninsured driver, the court was similarly precluded from reducing his award in the trial against American Family.

¶ 32 This argument is foreclosed, however, by our supreme court's holding in *Colorado Permanente Medical Group, P.C. v. Evans,* 926 P.2d 1218, 1233 (Colo.1996). There, the court held that the contract exception does not apply when the defendant is the collateral source. It reasoned that "the purpose of the contract exception . . . is to ensure that a defendant does not receive a windfall by avoiding payment of damages because the plaintiff had the foresight to purchase insurance, or enter into a contract that compensates the plaintiff for injury caused by the defendant." *Id.* But when "the payor of the compensation pursuant to the contract is also liable for the plaintiff's judgment, the rationale for the contract exception disappears," and, accordingly, "offset pursuant to section 13–21–111.6 is required." *Id.*

### 3. Payment of Separate Premiums

¶ 33 Finally, we reject Calderon's argument that paying separate premiums for MedPay and UM/UIM coverage entitles him to benefits under both policy provisions, even if that means obtaining a double recovery.

¶ 34 Calderon specifically asserts that an insurer "should not benefit by collecting double premiums while not having to honor the full value of the UM/UIM coverage for which the insured has already paid." But MedPay and UM/UIM coverage insure against different risks: MedPay coverage "permits the insured to gain speedy reimbursement for medical expenses incurred as a result of an automobile collision without regard to the insured's fault," *DeHerrera v. Am. Family Mut. Ins. Co.,* 219 P.3d 346, 351 (Colo.App.

2009), while UM/UIM coverage "compensate[s] an innocent insured for loss, subject to the insured's policy limits, caused by financially irresponsible motorists," and requires proof of an uninsured or underinsured motorist's fault, *Terranova,* 800 P.2d at 61. Because of these differences, reducing UM/UIM benefits by the amount of MedPay benefits paid does not render MedPay coverage illusory. *See Levy,* 293 P.3d at 46. Thus, Calderon benefitted from his policy's MedPay and UM/UIM coverage.

### III. Conclusion

¶ 35 The judgment is affirmed.

JUDGE J. JONES and JUDGE ASHBY concur.