24CA0411 ICP-Flywheel v Five M 02-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0411
Weld County District Court No. 22CV30649
Honorable Shannon D. Lyons, Judge

---

ICP-Flywheel Diamond Valley, LLC,

Plaintiff-Appellant,

v.

Five M Enterprises, LLC,

Defendant-Appellee.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE LUM
Fox and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

---

The Law Office of Stephen A. Hess, P.C., Stephen A. Hess, Colorado Springs, Colorado, for Plaintiff-Appellant

Buchalter, Robert B. Hinckley, Jr., Sarah M. Andrzejczak, Denver, Colorado, for Defendant-Appellee

¶ 1    In this commercial real estate purchase dispute, plaintiff, ICP-Flywheel Diamond Valley, LLC (Flywheel), appeals the judgment entered in favor of defendant, Five M Enterprises, LLC (Five M).

¶ 2    We affirm.

## I.    Factual Background

¶ 3    Flywheel[1] entered into a contract to purchase a commercial building from Five M.  After several amendments to the contract and extensions of the closing date, the parties ultimately agreed to a final purchase price of $9,560,000 and a closing date of August 5.  The contract required Flywheel to deposit $400,000 of earnest money in escrow with the title company, which it did.

¶ 4    The contract contained a time-is-of-the-essence provision and other provisions that required Flywheel to pay the total purchase price on or before the closing deadline.  The contract's liquidated damages provision stated that if Flywheel defaulted, Five M could cancel the contract and receive the earnest money held in escrow.

---

[1] Flywheel Acquisitions, LLC, originally entered into the contract at issue, and then, before filing this lawsuit, it assigned its rights to ICP-Flywheel Diamond Valley, LLC.  For simplicity, we refer to the two entities as one.

¶ 5    Three days before closing, Flywheel requested another extension of the closing date due to funding issues, but Five M declined. Then, on Friday, August 5, Flywheel wired the title company $6,680,000 of the $9,560,000 purchase price. Once notified that Flywheel had not wired the full purchase price, Five M instructed the title company not to close. Flywheel responded that it also could not authorize closing because it was missing certain estoppel certificates. (Five M submitted the missing certificates later in the day.)

¶ 6    On Monday, August 8, Flywheel paid the outstanding $2,880,000 to the title company and attempted to close, but Five M again declined.

## II.    Procedural Background

¶ 7    The parties then commenced the underlying litigation. Flywheel filed claims for breach of contract, seeking both specific performance and damages. Five M counterclaimed for breach of contract. In addition, both parties filed claims for declaratory judgment relating to the substance of their breach of contract claims, and Five M requested declaratory judgment as to its right to retain the earnest money.

¶ 8       Five M moved for summary judgment on all claims and counterclaims, arguing that Flywheel breached the contract and that Five M was entitled to the earnest money. The trial court granted the motion in part, ruling that Flywheel couldn't prevail on its own breach of contract claims as a matter of law because it failed to substantially perform when it did not timely tender the full purchase price.[2] However, the court denied summary judgment as to Five M's counterclaim for breach of contract because there was some dispute over whether Five M performed all of its own obligations before closing. The trial court reserved ruling on both parties' declaratory judgment claims.

¶ 9       After a bench trial, the court found that Five M fully performed its own contractual obligations. Based on this finding and on its summary judgment ruling that Flywheel failed to substantially perform, the court ruled in favor of Five M on its breach of contract claim. The court also concluded that the liquidated damages provision was enforceable, entitling Five M to retain the earnest

---

[2] The trial court also rejected Flywheel's arguments that Five M modified the closing date or waived the time-is-of-the-essence provision. Flywheel doesn't appeal the court's resolution of those issues.

money.  Given these rulings, the court resolved both parties' declaratory judgment claims in Five M's favor.  Finally, the court awarded Five M attorney fees under the contract's prevailing party provision.

¶ 10    Flywheel appeals, arguing that the trial court erred by (1) concluding as a matter of law that Flywheel failed to substantially perform; (2) entering declaratory judgment in favor of Five M; and (3) enforcing the liquidated damages provision.  Flywheel also argues that if we reverse based on any of its asserted errors, we must also reverse the trial court's award of attorney fees to Five M.

III.    Substantial Performance and Material Breach

¶ 11    Flywheel first contends that the trial court erred by dismissing its breach of contract claim on summary judgment.  Specifically, it argues that a triable issue of fact existed as to whether it substantially performed its obligations by submitting the full amount of the purchase price one business day after the deadline. Because we conclude that Flywheel didn't preserve this argument, we decline to address it.

¶ 12    In general, "issues not raised in or decided by a lower court will not be addressed for the first time on appeal."  *Scott R. Larson,*

*P.C. v. Grinnan,* 2017 COA 85, ¶ 70 (citation omitted). Nevertheless, "where a trial court addresses an argument, whether that argument was preserved is moot," and the merits of its ruling are subject to appellate review. *In re Estate of Ramstetter,* 2016 COA 81, ¶ 71 n.7.

¶ 13 Flywheel appears to acknowledge that its response opposing summary judgment didn't directly raise the issues it asks us to consider on appeal. However, it contends that "these considerations are baked into the elements themselves in a manner that compels inquiry by the [t]rial [c]ourt." It's true that, in resolving summary judgment on Flywheel's breach of contract claims, the trial court briefly addressed the materiality of the time-is-of-the-essence provision and Flywheel's failure to substantially perform due to its late payment.[3] But the court didn't address *the existence of any factual dispute* about the provision's materiality — or about whether Flywheel's untimely payment could nevertheless

---

[3] To the extent Flywheel argues that the court substantively addressed the materiality of its breach in the court's post-trial findings of fact and conclusions of law, we disagree. At that point, the court had already determined that Flywheel hadn't substantially performed as a matter of law, and it resolved the issue of Flywheel's breach by referring back to its summary judgment ruling.

be considered substantial performance — because Flywheel didn't raise those arguments below.

¶ 14     Five M's summary judgment motion argued plainly that (1) time was of the essence; (2) the closing date was absolute; and (3) Flywheel's failure to pay in full by the deadline constituted a material breach.

¶ 15     In opposing Five M's motion, Flywheel argued that summary judgment was improper because disputed issues of material fact existed as to whether

- the parties' conduct modified the closing date;

- Five M's conduct constituted a waiver of the time-is-of-the-essence provision;

- the parties had resolved an issue regarding obligations to conduct tenant improvements;

- Flywheel waived objections to the tenant improvement issue; and

- Five M was equitably estopped from asserting that Flywheel waived such objections.

¶ 16     Flywheel also argued that Five M had failed to perform its own contractual obligations and that it wasn't entitled to liquidated

6

damages.  But Flywheel didn't raise any argument suggesting that its breach was immaterial if the August 5 deadline remained intact.

¶ 17    Contrary to Flywheel's preservation arguments on reply, none of the contentions it raised was "sufficiently robust to allow the [trial court] to rule on the materiality of [Flywheel's] alleged breach." The trial court therefore didn't have the opportunity to consider the contention Flywheel now raises on appeal: even absent modification, waiver, or estoppel, a genuine issue of material fact existed about whether it substantially performed (or, conversely, materially breached) its payment obligation by tendering the balance of the purchase price one business day late.  And the court wasn't obligated to ferret out a potential factual dispute about substantial performance in the absence of any argument from Flywheel that one existed.  *Cf. S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶ 2 ("[A] trial court is not required to review the entire record on file for factual disputes before ruling on a summary judgment motion."); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 (6th Cir. 1992) (It is "inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing

legal theories, and finding ways to defeat the [summary judgment] motion."), *quoted in S. Cross*, ¶ 31.

¶ 18    For these reasons, we decline to address Flywheel's contention as unpreserved. *See White v. Progressive Mountain Ins. Co.*, 62 P.3d 1074, 1077 (Colo. App. 2002) (declining to address a statute of limitations argument not raised in summary judgment response).

## IV.    Declaratory Judgment

¶ 19    Flywheel contends that, if we reverse the court's grant of summary judgment on the substantial performance issue, we must also reverse the entry of declaratory judgment in favor of Five M. Because we don't address Flywheel's substantial performance arguments, the trial court's summary judgment ruling remains intact, and we need not address this contention.

## V.    Liquidated Damages

¶ 20    Flywheel next argues that the trial court erred by enforcing the liquidated damages provision.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 21    A liquidated damages provision is enforceable if (1) "the parties intended to liquidate damages"; (2) "the amount of liquidated damages, when viewed as of the time the contract was made, was a

reasonable estimate of the presumed actual damages that the breach would cause"; and (3) "when viewed again as of the date of the contract, it was difficult to ascertain the amount of *actual damages* that would result from a breach." *Klinger v. Adams Cnty. Sch. Dist. No. 50*, 130 P.3d 1027, 1034 (Colo. 2006) (quoting *Rohauer v. Little*, 736 P.2d 403, 410 (Colo. 1987)). "If any one of the elements is not met, the provision is an invalid penalty." *Ravenstar, LLC v. One Ski Hill Place, LLC*, 2017 CO 83, ¶ 10.

¶ 22    The enforceability of a liquidated damages clause is a question of law that we review de novo. *Id.* at ¶ 9. However, "[u]nless the contract on its face establishes that the stipulated liquidated damages are so disproportionate to any possible loss as to constitute a penalty, the determination of whether the specified damages constitute a penalty is a question of fact." *Klinger*, 130 P.3d at 1034; *see Rohauer*, 736 P.2d at 410. "[T]he party asserting that the damages clause constitutes a penalty has the burden of proving it." *Butler v. Lembeck*, 182 P.3d 1185, 1191 (Colo. App. 2007); *see also Rohauer*, 736 P.2d at 410.

## B. Additional Facts and Trial Court Ruling

¶ 23 The liquidated damages provision provides that, if Flywheel is in default, Five M can cancel the contract, and "[a]ll Earnest money (whether or not paid by [Flywheel]) will be paid to [Five M], and retained by [Five M]." The provision further states,

> It is agreed that the Earnest Money specified in § 4.1 is LIQUIDATED DAMAGES, and not a penalty, which amount the parties agree is fair and reasonable and (except as provided in §§ 10.4, 22, 23 and 24), [sic] said payment of Earnest Money is [Five M's] ONLY REMEDY for [Flywheel's] failure to perform the obligations of this Contract. [Five M] expressly waives the remedies of specific performance and additional damages.

Four hundred thousand dollars was held in escrow as earnest money at the time of closing.

¶ 24 The court determined that the parties intended to liquidate damages and that $400,000 was reasonable and proportionate. The court also found that "[a]t the time of contracting, it would have been difficult to ascertain either party's damages in the event of a breach" because it would be speculative to calculate the costs of Five M's lost opportunities to sell to another purchaser and the

10

expenses it incurred in providing due diligence documents and negotiating terms for a deal that never closed.

## C.    Analysis

¶ 25    Flywheel doesn't dispute that the parties intended to liquidate damages.  However, it contends that the trial court erred because it (1) did not "assess the liquidated damage clause against the applicable measure of damages employed by [Colorado] courts" and (2) considered "unpleaded — and untested — special damages" in considering whether the provision was enforceable.  We address each of these arguments as they apply to the "difficult to ascertain" and "reasonable estimate" factors of the enforceability test.

### 1.    Difficult to Ascertain

¶ 26    First, Flywheel contends that the trial court's consideration of lost opportunity and out-of-pocket transactional costs ignored the standard measure of damages for breach of a real estate contract: the "difference between the contract price and the fair market value of the property at the time of breach."  *Kroesen v. Shenandoah Homeowners Ass'n,* 2020 COA 31, ¶ 57.  However, Flywheel fails to explain how calculating that difference would have been easily ascertainable *at the time of contracting.  See Rohauer,* 736 P.2d at

11

411. When they entered into the contract, the parties could not know when any possible breach would occur or what would happen to the market value of the property between the signing of the contract and the breach. *See id.* ("It is the difficulty in ascertaining damages at the time of the contract, not afterwards, that is relevant for purposes of enforcing a liquidated damages provision."). Moreover, it was Flywheel's burden to prove that the damages were ascertainable, *see Butler*, 182 P.3d at 1191, and it doesn't point us to any evidence in the record suggesting it met that burden.

¶ 27    Second, Flywheel contends that the trial court erred because it evaluated the difficulty of ascertaining damages based on special damages — the lost opportunity and out-of-pocket transaction costs — that Five M could not recover.

¶ 28    To the extent Flywheel contends that Five M couldn't recover lost opportunity and out-of-pocket transaction costs as a matter of law, it provides no authority to support that proposition. *See Ute Water Conservancy Dist. v. Fontanari*, 2022 COA 125M, ¶ 53 ("In a breach of contract action, the prevailing party typically can seek to recover 'general' and 'special' damages.") (citation omitted). Likewise, Flywheel provides no authority to support its arguments

that (1) the court was only permitted to examine the ascertainment difficulty associated with the "standard measure" of general damages for a real estate contract; and (2) the court couldn't examine the ascertainment difficulty associated with damages that, in the absence of a liquidated damages provision, would have to be pleaded as "special" or "consequential" damages. *First Citizens Bank & Tr. Co. v. Stewart Title Guar. Co.*, 2014 COA 1, ¶ 46 ("Consequential or special damages must be specifically pleaded in the complaint pursuant to C.R.C.P. 9(g)."). We therefore reject these contentions.

## 2.     Reasonable Estimate

¶ 29     As best we understand it, Flywheel doesn't argue on appeal that the liquidated damages clause is disproportionate or punitive on its face. And although Flywheel contended at oral argument that it raised the "reasonable estimate" or "proportionality" factor in its opening brief, those arguments (if any) are difficult to discern. To the extent Flywheel contends that the court should have used the "standard measure" of damages (i.e., the difference between the contract price and the market price of the property at the time of the breach) to decide whether $400,000 was a "reasonable estimate

13

of the presumed actual damages that the breach would cause," its argument isn't developed. Flywheel doesn't explain why $400,000 *isn't* a reasonable estimate of the difference between the contract price and the market price when viewed as of the time of contracting. Nor does its opening brief provide us with any argument as to what a reasonable estimate of that difference might be.[4] Thus, even if the court erred by not considering the "standard measure" of damages, Flywheel hasn't demonstrated that it was

---

[4] In its reply brief, Flywheel shifts gears and argues that "the relevant inquiry should be whether the parties contemplated that Five M . . . would have lost the benefit of some hypothetical 1031 exchange or the ability to close another deal it could have solicited merely by closing one business day after projected." We decline to address this contention. *In re Marriage of Dean*, 2017 COA 51, ¶ 31 ("We do not consider the arguments [the appellant] makes for the first time in her reply brief or those that seek to expand upon the contentions she raised in her opening brief."). Likewise, Flywheel contends on reply that its opening brief "unambiguously recite[s] that the actual damage that Five M . . . would have suffered if it had closed was several thousand dollars." But as it pertained to liquidated damages, it raised that contention in only one sentence of its summary of argument and one sentence in its conclusion. Otherwise, any discussion of the actual damages being "several thousand dollars" was confined to the discussion about substantial performance. Accordingly, we won't address this argument either. *See id.*; *Gravina Siding & Windows Co. v. Gravina*, 2022 COA 50, ¶ 71 ("[I]t is not this court's function to speculate as to what a party's argument might be." (quoting *People v. Palacios*, 2018 COA 6M, ¶ 29)); *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (declining to address undeveloped arguments).

prejudiced.  *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties.").

¶ 30    Finally, it's unclear why the trial court wasn't permitted to consider special damages when determining whether $400,000 was, when viewed at the time of contracting, a "reasonable estimate" of the actual damages Five M might suffer.  Flywheel doesn't cite, and we haven't found, any authority supporting such an argument.

¶ 31    For these reasons, we discern no reversible error.

VI.    Attorney Fees and Appellate Attorney Fees

¶ 32    Because we affirm the trial court's judgment, we also affirm its award of attorney fees to Five M under the contract's prevailing party provision.

¶ 33    For the same reason, we conclude that Five M is entitled to its reasonable appellate attorney fees, and we reject Flywheel's request for appellate fees.  *See Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 506 (Colo. App. 2003).  We exercise our discretion under C.A.R. 39.1 and remand the case to the trial court for a determination of the reasonable appellate attorney fees to which Five M is entitled.

## VII. Disposition

¶ 34    The judgment is affirmed, and the case is remanded to the trial court to determine the amount of reasonable attorney fees Five M incurred on appeal.

JUDGE FOX and JUDGE GOMEZ concur.